**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-1402-WJM

ROBERT HARVEY LUTGENS,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

---

**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION**

---

This social security benefits appeal is before the Court under 42 U.S.C. § 405(g). Plaintiff Robert Harvey Lutgens ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits. The denial was affirmed by an Administrative Law Judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

For the reasons set forth below, the ALJ's decision denying Plaintiff's application for Social Security disability benefits is AFFIRMED.

## I.  BACKGROUND

Plaintiff was born on February 3, 1951 and was 56 years old on the alleged disability onset date. (Admin. Record ("R.") (ECF No. 8) at 16.) Plaintiff has more than a high school education and has past relevant work experience as a electrical Line

Repairer.  (R. at 10.)

Plaintiff filed an application for disability insurance benefits on January 8, 2009, alleging that he had been disabled since July 12, 2007 due to limited vision in his right eye.  (*Id.*)  Plaintiff's application was initially denied on April 29, 2009.  (R. at 49-51.)

After timely requesting a hearing on May 21, 2009, Plaintiff's claims were heard by ALJ E. William Shaffer on February 3, 2011.  (R. at 10.)  Plaintiff and vocational expert Dennis Duffin testified at the administrative hearing.  (*Id.*)  Medical evidence and opinions were provided by treating physicians Dr. Lisa Jordan, O.D., an optometrist, and Dr. Mariah Teeter, M.D., an ophthalmologist; examining physician Dr. Neil Wainwright, M.D., an ophthalmologist; and non-examining state agency physician Dr. Harrison Hayes, also an ophthalmologist.  (R. at 15-16, 300.)

On February 23, 2011, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1]  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 12, 2007, the alleged onset date.  (R. at 12.)  At step two, he found that Plaintiff suffered from unilateral vision loss and visual field constriction, a severe impairment.  (*Id.*)  The ALJ did not find Plaintiff's hypertension to be a severe impairment.  (R. at 13.)  At step three, the ALJ found that Plaintiff's vision loss and constriction, while a severe impairment, did

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.)  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

not meet any of the impairments or combination of impairments listed in the social security regulations. (*Id.*) The ALJ assessed Plaintiff's residual functional capacity ("RFC"), finding that he had the RFC to perform "medium" work as defined by the regulations, except that he would be unable to work from heights. (R. at 13.) The RFC also stated that because Plaintiff suffers from impairment of depth perception, central and peripheral vision such that he has difficulty with hand-eye coordination, although he can perform gross manipulative and visual activities, he cannot manipulate small objects. (*Id.*) Given this RFC, at step four, the ALJ found that Plaintiff could not perform his past relevant work as a lineman. (R. at 16.) However, at step five, the ALJ found that Plaintiff was capable of performing other work in the national economy, including work as a Buffet Attendant, Delivery Driver, Floor Waxer, and Sales Route Driver. (R. at 17.) Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and therefore was not entitled to benefits. (*Id.*)

The Appeals Council denied Plaintiff's request for review on April 26, 2012. (R. at 1-4.) Thus, the ALJ's February 23, 2011 decision is the final administrative action for purposes of review.

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a

preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  ANALYSIS

On appeal, Plaintiff challenges the ALJ's formulation of the RFC, contending that the ALJ failed to consider and include all of Plaintiff's limitations. (ECF No. 13 at 6.)

The RFC is an assessment of a claimant's capabilities in a work setting to determine "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must make specific RFC findings based on all of the relevant evidence in the case record. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996) (evidence considered in an RFC assessment may include the claimant's medical history, medical signs and laboratory findings, and medical source statements). The RFC analysis must explain "how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence". SSR 96–8p. The ALJ's articulation of a claimant's RFC must include:

> the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* The ALJ's findings regarding the RFC must be supported by substantial evidence. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

In this case, the ALJ found that Plaintiff had the RFC to:

> perform medium work as defined in 20 CFR 404.1567(c) except that he would be unable to work from heights; he is subject to impairment of depth perception, and central and peripheral vision, such that he experiences difficulties with hand-eye coordination and is precluded from manipulating small objects, though he retains the capacity to perform gross manipulative and visual activities.

(R. at 13.) Plaintiff argues that the ALJ erred in this RFC formulation by failing to consider and include (1) Plaintiff's limited ability to drive in reduced visibility weather conditions, and (2) Plaintiff's limited field of vision and its effect on his exertional capacity. (ECF No. 13 at 6.) Plaintiff alleges that both of these errors were caused by the ALJ's application of the wrong legal standard, and that neither determination was supported by substantial evidence. (*Id.* at v-vi.) The Court will address each of Plaintiff's arguments in turn.

## A.     Driving in Reduced Visibility Conditions

Plaintiff contends that, because the ALJ gave "great weight" to Dr. Jordan's medical opinion, the ALJ erred in failing to include in the RFC the restriction on driving in reduced visibility weather conditions. (ECF No. 13 at 10-13.) As a result, Plaintiff argues, the hypothetical question posed to the vocational expert at step five was

incomplete, and thus the vocational expert's conclusion that Plaintiff could perform driving jobs was in error.  (*Id.* at 12-13.)

First, Plaintiff's argument mischaracterizes the ALJ's decision with regard to Dr. Jordan's opinion.  Although the ALJ stated that "great weight is given to Dr. Jordan's restrictions for working from heights and avoidance of tasks requiring a full visual field," he then found that "[h]er comments that [Plaintiff] avoid tasks regarding 'good vision' are too vague, while her other restrictions are job-specific, and are given no weight." (R. at 15.)  Plaintiff's argument presumes that the ALJ found Dr. Jordan's restriction on all-weather driving to be a restriction on a "task[ ] requiring a full visual field," which the ALJ gave great weight, rather than a "job-specific" restriction that was given no weight.  It is clear that the ALJ did not adopt Dr. Jordan's restrictions whole cloth.

Nevertheless, Plaintiff argues that the ALJ erred in failing to include this restriction, because he "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." (ECF No. 13 at 11 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).) Although Plaintiff accurately cites Tenth Circuit case law, it is inapplicable here where Dr. Jordan's restrictions were not entirely uncontradicted.  The record showed that Plaintiff was able to maintain a regular driver's license and avoid traffic hazards, supported by Plaintiff's own testimony of such, which indicated no restrictions in driving. (*See* R. at 14, 30-33.)  Thus, the ALJ had discretion to reject Dr. Jordan's driving restriction.

Further, despite Plaintiff's argument that the failure to include driving restrictions tainted the ALJ's hypothetical question to the vocational expert, the ALJ's commentary to the vocational expert on this point reveals that he considered Plaintiff's visual limitations: "grossly, he's able to drive a car . . . and there's certainly some risks in operating a motor vehicle that he can accommodate for even with the limited vision." (R. at 40-41.) This description of Plaintiff's driving capacity, in combination with the fact that the vocational expert was present during Plaintiff's testimony of his impairments, indicates that the vocational expert was informed of the kinds of limitations Plaintiff faced and made his recommendations accordingly. *Cf. Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990) (holding that the vocational expert's presence during the claimant's testimony and its effect on her evaluation "suggests that the expert was cognizant of [the claimant]'s other impairments and that she was making an individualized assessment," and thus any error was essentially harmless).

Based on the record, the Court finds that "more than a scintilla" of evidence exists to support the ALJ's evaluation of Plaintiff's driving capacity, and that evidence was not overwhelmed by contrary evidence. *See Lax*, 489 F.3d at 1084. As there is sufficient evidence in the record to support the ALJ's determination, the Court must defer to the ALJ's evaluation of the evidence and may not reweigh it in his place. *See Salazar*, 468 F.3d at 621. Accordingly, the Court finds that the ALJ's decision not to include restrictions on Plaintiff's driving capacity in the RFC was supported by substantial evidence in the record. *Id.*

**B.     Exertional Capacity**

Plaintiff argues that the ALJ erred in not including in the RFC Plaintiff's increased risk of tripping due to his limited field of vision, and contends that such tripping hazards have the effect of reducing Plaintiff's ability to actually perform work of a medium exertional level.  (ECF No. 13 at 14-15.)  Plaintiff claims that if his RFC included the risk of tripping, he would not have been able to perform medium work, as such work often involves lifting large, bulky items whose bulkiness and weight would increase the likelihood of a trip and/or fall, and therefore the jobs available to Plaintiff at step five would be significantly eroded.  (*Id.* at 16-17.)

First, the ALJ's opinion indicates that Plaintiff's testimony was not deemed fully credible with regard to his limitations because they were not supported by the medical evidence.  (R. at 15-16.)  Although the ALJ did not specify the weight he gave to Plaintiff's testimony regarding his difficulty walking and tendency to run into tripping hazards and other people on his right side, the fact that the ALJ placed no restrictions on walking in the RFC indicates that such limitations were not found credible.  (*See* R. at 17.)  The record reveals no medical opinion restricting Plaintiff's ability to walk and generally avoid hazards, and instead indicates that Plaintiff's primary limitation is his loss of depth perception.  (*See* R. at 14.)  Therefore, the Court finds substantial evidence in the record to support the ALJ's choice not to include tripping hazards in the RFC.

Second, even if Plaintiff's testimony regarding tripping hazards were deemed credible and the Court were to agree with Plaintiff's speculative assertion regarding the

large size of objects carried when performing a medium exertional job, the Court finds no evidence in the record to support Plaintiff's argument that his exertional capacity should be reduced below medium work.  Because the medical records and Plaintiff's testimony indicated no exertional limitations, the only reason for the ALJ to include an exertional limitation in the RFC would be if the ALJ assessed the impact of Plaintiff's nonexertional impairment on his exertional capacity.  Considering Plaintiff's previous work, which Plaintiff asserts was exertionally "heavy" (*see* ECF No. 13 at 15), it is apparent that the ALJ has already reduced Plaintiff's exertional capacity from heavy to medium.  Further, given Plaintiff's testimony that he maintained a regular driver's license and regularly performed tasks on his 35-acre property that included hauling wood to the house with a wheelbarrow (*see* R. at 13) and hauling water to the property by driving a tank truck (*see* R. at 37-38), substantial evidence exists to support the ALJ's conclusion that Plaintiff remains capable of medium work.

Finally, Plaintiff bases his exertional capacity argument in part on Social Security Ruling 83-14, which discusses how to evaluate claimants "who have both a severe exertional impairment and a nonexertional limitation or restriction."  By way of example, Social Security Ruling 83-14 discusses a situation where a claimant has a visual impairment that, while "not of Listing severity," constricts visual fields sufficiently for "the person to be a hazard to self and others" based upon tripping hazards and inability to detect approaching objects, and thus significantly diminishes the occupational base where that claimant is limited to light or medium work.  Plaintiff's ability to drive a vehicle and avoid normal traffic hazards constitutes substantial evidence in the record

to support the conclusion that Plaintiff's visual field constriction was not so great as to cause him to be a hazard to himself and others, as he was generally able to detect approaching objects.  (*See* R. at 13-14.)  The ALJ included a limitation in the RFC that Plaintiff should not work from heights, indicating that the ALJ considered Plaintiff's visual field constriction and Dr. Jordan's medical opinion supporting that limitation.  (R. at 14-15.)  Thus, the Court finds that the ALJ's decision not to further reduce Plaintiff's exertional capacity based upon his visual limitations was supported by substantial evidence in the record.

Finally, although Plaintiff asserts at the beginning of his Brief that the ALJ also erred in that he applied the wrong legal standard (ECF No. 13 at vi), no such argument is raised in the body of the Brief.  Therefore, the Court finds that the ALJ applied the correct legal standards.

In sum, the Court finds that the ALJ did not err in formulating the RFC, he applied the correct legal standards, and his conclusions were supported by substantial evidence in the record.

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED.

Dated this 27th day of June, 2013.

BY THE COURT:

William J. Martinez
United States District Judge